IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

REAGAN NATIONAL ADVERTISING OF
AUSTIN, INC.,
          Plaintiff,

-vs-

CITY OF CEDAR PARK,
          Defendant.

CAUSE NO.:
AU-17-CA-00717-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant City of Cedar Park (the City)'s Amended Motion for Summary Judgment [#24], Plaintiff Reagan National Advertising of Austin, Inc. (Reagan)'s Response [#29], Cedar Park's Reply [#30] in support, Reagan's Sur-Reply [#33] in opposition, and Cedar Park's Sur-Sur-Reply [#35] in support.[1] Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

**Background**

This is a First Amendment case. Reagan is a commercial billboard company in the business of outdoor advertising. Am. Compl. [#18] at 2. On March 8, 2017, Reagan submitted five sign permit applications to the City. Am. Mot. Summ. J. [#24-2] (Sign Permit Applications). Three of these applications requested permission to install digital sign faces on three existing outdoor signs (the Digital Conversion Applications). *Id.* at 1, 2–16. The other two applications

---

[1] Cedar Park's Motion to Strike Sur-Reply or, in the Alternative, Motion for Leave to File Sur-Sur-Reply [#32] is DISMISSED AS MOOT because Cedar Park has already filed its sur-sur-reply, which the Court considers herein.

1

sought permits for the construction of two new signs (the New Sign Applications). *Id.* at 1, 17–32.

To receive approval, permit applications must demonstrate proposed signs meet the requirements of the City's Sign Code.[2] These requirements are contained in two articles. The first article—Article 13.01—is entitled "On-Premises Sign Standards and Permits." Am. Mot. Summ. J. [#24-5] Ex. 5 (Sign Code) at 1. The second article—Article 13.03—is entitled "Off-Premises Sign Standards and Permits." *Id.* at 25.

Both Article 13.01 and Article 13.03 contain provisions which rely upon a distinction between on-premises and off-premises signs. An "on-premises sign" is defined as a "sign identifying or advertising the business, person, activity, goods, products, or services located on the site where the sign is installed, or that directs persons to a location on that site." Sign Code at 4. By contrast, an "off-premises sign" is defined as a "sign referring to goods, products or services provided at a location other than that which the sign occupies." *Id.* at 3–4. All five of Reagan's permit applications relate to off-premises signs.

On March 14, 2017, the City denied all five of Reagan's permit applications. Am. Mot. Summ. J. [#24-4] Ex. 4 (Denial Letters). Among other reasons, the New Sign Applications were denied because they proposed using light-emitting diode (LED) displays in off-premises signs. *Id.* at 7–10. Although the Sign Code allows LED displays to be incorporated into some on-premises signs, it bans the use of LED displays in off-premises signs. *See* Sign Code § 13.01.007(i)(4) ("Electronically controlled changeable messages signs shall not advertise goods or services not offered on the premises on which the sign is located."); *id.* § 13.03.006(d)

---

[2] The City enacted a new sign code the day after Reagan submitted its permit applications. Am. Mot. Summ. J. [#24] at 5 n.4. However, Texas law requires the permit applications be evaluated under the law as it existed at the time they were submitted, rather than under the new, revised sign code. TEX. LOC. GOV'T CODE § 245.002.

2

("No light emitting diode (LED) displays or signs shall be permitted."). The City likewise denied the Digital Conversion Applications because, like the New Sign Applications, the Digital Conversion Applications proposed installing LED displays in off-premises signs. Denial Letters at 1–6; Sign Code §§ 13.01.007(i)(4), 13.03.006(d); *see also id.* §§ 13.01.016(a), 13.03.007(a) ("[N]o change or alteration shall be made [to existing signs] that would increase the degree of nonconformity [with the Sign Code].").

After the City denied Reagan's permit applications, Reagan filed this action in state court arguing that the Sign Code's differing treatment of on-premises and off-premises signs constitutes content discrimination and that this content-based distinction cannot survive constitutional scrutiny. Notice Removal [#1-1] Ex. 1 (Original Pet.) at 4. On this basis, Reagan seeks to invalidate the entire Sign Code. Reply [#31] at 3. The City later removed the action to this Court and now moves for summary judgment. Notice Removal [#1]; Am. Mot. Summ. J. [#24]. This pending motion is ripe for review.

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

4

## II. Application

The City argues it is entitled to summary judgment because the distinction drawn by the Sign Code between on-premises and off-premises commercial speech is constitutional as a matter of law. Am. Mot. Summ. J. [#24] at 2. Reagan, meanwhile, contends this distinction is an unconstitutional content-based regulation of speech under the First Amendment. Resp. [#29] at 20. The Court first determines the standard of scrutiny and then turns to assessing the constitutionality of the Sign Code.

### A. Level of Scrutiny

The parties disagree on the level of scrutiny to be applied. The City argues regulation of commercial billboard speech is subject to intermediate scrutiny under the Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). Am. Mot. Summ. J. [#24] at 6–7. Reagan disagrees. According to Reagan, the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) effectively abrogated *Metromedia* by requiring strict scrutiny be applied to all content-based regulations of speech, regardless of whether the speech in question is commercial or not. Resp. [#29] at 6–15. Reagan alternatively contends that even if intermediate scrutiny applies to commercial speech, strict scrutiny should be applied here because the Sign Code's content-based distinctions also apply to noncommercial speech. *Id.* at 15–16.

In *Metromedia*, the Supreme Court considered the constitutionality of a San Diego ordinance that permitted on-premises commercial advertising but forbid off-premises commercial advertising. *Metromedia*, 453 U.S. at 495–96. The Supreme Court "unambiguously held" San Diego could constitutionally discriminate between on-premises and off-premises commercial speech. *RTM Media, LLC v. City of Houston*, 584 F.3d 220, 223–224 (5th Cir. 2009)

5

(citing *Metromedia*, 453 U.S. at 507–512). And in upholding the ordinance as applied to commercial speech, the Supreme Court applied a form of intermediate scrutiny—the *Central Hudson* commercial speech test—on the ground that commercial speech is entitled to "'lesser protection . . . than other constitutionally guaranteed expression.'" *Metromedia*, 453 U.S. at 507 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980)); *see also Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 583 (2011) (Breyer, J., dissenting) (characterizing *Central Hudson*'s commercial speech test as an "'intermediate' standard"). Thus, under *Metromedia*, Reagan's commercial speech would be subjected to intermediate scrutiny.

Reagan contends, however, that the Supreme Court's more recent decision in *Reed* overrules both *Metromedia* and *Central Hudson* and requires strict scrutiny be applied to content-based regulations of even commercial speech. Resp. [#29] at 6–15. In *Reed*, the Supreme Court considered the constitutionality of a local ordinance that applied differing requirements to certain noncommercial signs depending upon whether the sign in question qualified as an "Ideological," "Political," or "Temporary Directional" sign under the ordinance. *Reed*, 135 S. Ct. at 2224–25. The Court held these sign classifications were content-based regulations of speech. *Id.* at 2228. The Court also held that because the regulations were content based, they were subject to strict scrutiny "regardless of the government's benign motive, content-neutral justification, or 'lack of animus toward the ideas contained' in the regulated speech. *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). According to Reagan, *Reed* requires all content-based regulations of speech to survive strict scrutiny—regardless of whether the speech at issue is commercial or not. Resp. [#29] at 6–15.

*Reed* does not require the application of strict scrutiny to content-based regulations of commercial speech. For starters, *Reed* concerned noncommercial speech, rather than commercial speech, and perhaps for that reason, the majority opinion in *Reed* makes no mention of the *Central Hudson* commercial speech standard. *See Reed*, 135 S. Ct. at 2224. What's more, there's little reason to believe the Court in *Reed* intended to alter *sub silentio* the application of the *Central Hudson* standard to commercial speech. To the contrary, a majority of the justices involved in *Reed* have indicated that *Reed* did not affect the application of *Central Hudson* to content-based regulations of commercial speech. *See Reed*, 135 S. Ct. at 2234–35 (Breyer, J., concurring) (assuming content-based regulations of commercial speech are not subject to strict scrutiny after *Reed*); *Matal v. Tam.*, 137 S. Ct. 1744, 1767 (2017) (Kennedy J., concurring in part and concurring in the judgment) ("Unlike content based discrimination, discrimination based on viewpoint, including a regulation that targets speech for its offensiveness, remains a serious concern in the commercial context."). Given this context, the Court concludes the *Central Hudson* standard continues to apply to content-based regulations of commercial speech.[3]

Reagan protests that even if *Reed* does not require the application of strict scrutiny to commercial speech, strict scrutiny should still apply here because the Sign Code's distinction between on-premises and off-premises signs might also be applied to noncommercial speech. Resp. [#29] at 15–16. This argument fails because Reagan has not shown it possesses standing to challenge the constitutionality of the Sign Code as applied to noncommercial speech. As an initial matter, Reagan has not shown it engages in noncommercial speech of its own. Nor has Reagan shown it has overbreadth standing to challenge the constitutionality of the Sign Code as applied to the noncommercial speech of third parties not before the Court.

---

[3] *See also Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) ("[A]lthough laws that restrict only commercial speech are content based, such restrictions need only withstand intermediate scrutiny." (internal citation omitted)).

7

Under the overbreadth standing doctrine, litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *see also Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797–98 ("[T]he very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected."). In order to demonstrate overbreadth standing, a litigant must show the unconstitutional overbreadth is "substantial" when "judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (reiterating that the party invoking federal jurisdiction bears the burden of establishing standing).

Here, Reagan has not established overbreadth standing because it has not shown the overbreadth of the Sign Code is substantial relative to the statute's plainly legitimate sweep. Though Reagan suggests its billboards occasionally carry noncommercial speech, Reagan does not identify any specific examples, much less demonstrate that noncommercial speech makes up a substantial portion of the City's off-premises speech. *See* Resp. [#29] at 15; *cf. Metromedia*, 453 U.S. at 504 n.11 (allowing overbreadth challenge where billboards conveyed "substantial amount" of noncommercial speech). Even more saliently, the Sign Code is unlikely to affect a substantial amount of noncommercial speech because it was superseded the day after Reagan filed its permit applications. *See* Am. Mot. Summ. J. [#24] at 5 n.4 (noting Reagan submitted its permit applications the day before the City's revised Sign Code went into effect). In sum, Reagan has not shown the Sign Code to be substantially overbroad, and the Sign Code is

8

unlikely to have a significant deterrent effect on noncommercial speech because it has been superseded and is incapable of prospective application.

The Court concludes Reagan is not entitled to overbreadth standing, and as a result, Reagan lacks standing to challenge the application of the Sign Code to noncommercial speech. The Court therefore proceeds to assess Reagan's challenge to the Sign Code's regulation of commercial speech under the *Central Hudson* standard.

B.    **Constitutionality**

The First Amendment protects commercial speech only insofar as that speech concerns lawful activity and is not misleading. *Metromedia*, 453 U.S. at 507 (citing *Central Hudson*, 447 U.S. at 563–66). To pass muster under *Central Hudson*, government regulation of commercial speech falling within the ambit of the First Amendment must directly advance a substantial government interest while reaching no further than necessary to accomplish its goals. *Id*. Reagan argues (1) the City does not possess a substantial government interest; and (2) to the extent a substantial government interest exists, it is not directly advanced by the City's Sign Code. Resp. [#29] at 16.

Reagan first argues the City does not possess a substantial government interest. *Id*. The Court disagrees. The Sign Code purports to further the City's interests in traffic safety and aesthetics by reducing "confusion and hazards that result from excessive and prolific use of sign displays" and by limiting "visual clutter" that might lead to a "decline in the community's appearance." Sign Code §§ 13.01.001, 13.03.005. Under *Metromedia*, these stated interests in traffic safety and aesthetics qualify as substantial government interests. *Metromedia*, 490 U.S. at 507–08 ("Nor can there be substantial doubt that . . . traffic safety and the appearance of the city . . . are substantial governmental goals.").

9

Reagan next argues that the City's interests in traffic safety and aesthetics are not directly advanced by the City's Sign Code. Resp. [#29] at 16. Specifically, Reagan contends the Sign Code as a whole fails to advance any substantial government interest because the City allows a single tenant on one of its properties to use an LED display for off-premises advertising. Resp. [#29] at 3, 16–21 (noting the HEB Center—a sports arena and live-event venue—uses an LED sign to display off-premises advertising).[4] Yet this single exception "is not so pervasive as to seriously undermine the stated purpose[s]" of the City's Sign Code. *See Paradigm Media Grp. v. City of Irving*, 65 F. App'x 509, 2003 WL 1922999, at *3 (5th Cir. 2003) (per curiam) (upholding advertising ordinance with narrow exception for "sports facilities" on the ground the ordinance was not so riddled with exceptions as to undermine the ordinance's stated purpose). Absent any further argument from Reagan, the Court concludes the Sign Code directly and materially advances the City's stated interests in traffic and aesthetics by restricting the number and types of signs appearing within the City. *See Metromedia*, 490 U.S. at 509 ("We likewise hesitate to disagree with the accumulated, common-sense judgments of local lawmakers . . . that billboards are real and substantial hazards to traffic safety."); *id.* at 510 (upholding ordinance restricting proliferation of billboards on the ground such restrictions advance substantial government interest in aesthetics).

In sum, the Court concludes the Sign Code directly advances the City's substantial government interests in traffic safety and aesthetics and survives constitutional scrutiny under *Central Hudson*. The Court therefore GRANTS the City's motion for summary judgment.

---

[4] Reagan provides no cogent explanation as to why it believes "[t]he exception made for this sign renders" the entire Sign Code unconstitutional. *See* Resp. [#29] at 19–20. Indeed, the Sign Code contains many provisions which have little to do with the distinction between on-premises and off-premises advertising. *See, e.g.*, Sign Code § 13.01.006(a) (prohibiting use of "flashing lights" and "revolving beacon lights"); *id.* § 13.01.008 (regulating signage in residential subdivisions); *id.* § 13.01.017(a)(1) (prohibiting signs which obstruct fire escapes).

## Conclusion

The Court concludes the distinction drawn by the Sign Code between on-premises and off-premises speech qualifies as a constitutional regulation of commercial speech. The Court therefore grants the City's motion for summary judgment on Reagan's First Amendment claim. And as this was Reagan's sole claim,[5] no claims remain following entry of this order.

Accordingly,

IT IS ORDERED the Court GRANTS the City of Cedar Park's Motion for Summary Judgment [#24]; and

IT IS FURTHER ORDERED that Cedar Park's Motion to Strike Sur-Reply or, in the Alternative, Motion for Leave to File Sur-Sur-Reply [#32] is DISMISSED AS MOOT.

SIGNED this the 24th day of September 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Although Reagan purports to bring both facial and as-applied First Amendment claims, "the distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 331 (2010).

11