IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**REAGAN NATIONAL ADVERTISING OF AUSTIN, INC.,**
          Plaintiff,

-vs-

**CITY OF CEDAR PARK,**
          Defendant.

CAUSE NO.:
AU-17-CA-00717-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant City of Cedar Park (the City)'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Reconsideration [#50], Plaintiff Reagan National Advertising of Austin, Inc. (Reagan)'s Response [#53] in opposition, the City's Reply [#56] in support, and the City's Brief [#46-1] in support.[1] Having reviewed the documents, the governing law, and the case file as a whole, the Court now enters the following opinion and order.

**Background**

This is a First Amendment case. Reagan is a commercial billboard company in the business of outdoor advertising. Am. Compl. [#18] at 2. On March 8, 2017, Reagan submitted five sign permit applications to the City. Am. Mot. Summ. J. [#24-2] (Sign Permit Applications). Three of these applications requested permission to install digital sign faces on existing outdoor signs (the Digital Conversion Applications). *Id.* at 1, 2–16. The other two applications sought permits for the construction of two new signs (the New Sign Applications). *Id.* at 1, 17–32.

---

[1] The Court GRANTS the City's related Motion to File [#46].

1

To receive approval, permit applications must demonstrate proposed signs meet the requirements of the City's Sign Code.[2] These requirements are contained in two articles. The first article—Article 13.01—is entitled "On-Premises Sign Standards and Permits." Am. Mot. Summ. J. [#24-5] Ex. 5 (Sign Code) at 1. The second article—Article 13.03—is entitled "Off-Premises Sign Standards and Permits." *Id.* at 25.

Both Article 13.01 and Article 13.03 contain provisions which rely upon a distinction between on-premises and off-premises signs. An "on-premises sign" is defined as a "sign identifying or advertising the business, person, activity, goods, products, or services located on the site where the sign is installed, or that directs persons to a location on that site." Sign Code at 4. By contrast, an "off-premises sign" is defined as a "sign referring to goods, products or services provided at a location other than that which the sign occupies." *Id.* at 3–4. All five of Reagan's permit applications relate to off-premises signs.

On March 14, 2017, the City denied Reagan's permit applications. Am. Mot. Summ. J. [#24-4] Ex. 4 (Denial Letters). Among other reasons, the New Sign Applications were denied because they proposed using light-emitting diode (LED) displays in off-premises signs and because they proposed to erect "pylon signs." *Id.* at 7–10; *see also* Sign Code § 13.01.007(i)(4) ("Electronically controlled changeable messages signs shall not advertise goods or services not offered on the premises on which the sign is located."); *id.* § 13.03.006(d) ("No light emitting diode (LED) displays or signs shall be permitted."). The City also denied the Digital Conversion Applications because, like the New Sign Applications, the Digital Conversion Applications proposed installing LED displays in off-premises signs. Denial Letters at 1–6; Sign Code

---

[2] The City enacted a new sign code the day after Reagan submitted its permit applications. Am. Mot. Summ. J. [#24] at 5 n.4. However, Texas law requires the permit applications be evaluated under the law as it existed at the time they were submitted, rather than under the new, revised sign code. TEX. LOC. GOV'T CODE § 245.002.

2

§§ 13.01.007(i)(4), 13.03.006(d); *see also id.* §§ 13.01.016(a), 13.03.007(a) ("[N]o change or alteration shall be made [to existing signs] that would increase the degree of nonconformity [with the Sign Code].").

After the City denied Reagan's permit applications, Reagan filed this action in state court arguing that the Sign Code's differing treatment of on-premises and off-premises signs constitutes content discrimination and that this content-based distinction cannot survive constitutional scrutiny. Notice Removal [#1-1] Ex. 1 (Original Pet.) at 4. The City subsequently moved for summary judgment on Reagan's constitutional claims. *See* Mot. Summ. J. [#24].

The Court granted the motion in part and denied the motion in part. Order of May 23, 2019 [#49] at 16–17. As a preliminary matter, the Court concluded Reagan possessed standing to challenge the denial of the Digital Conversion Applications but not the New Sign Applications. *Id.* at 4–7. The Court then considered the constitutionality of the Sign Code and concluded that although the Sign Code's regulation of commercial speech survived scrutiny under *Central Hudson*, the Sign Code's content-based regulations of noncommercial speech were subject to strict scrutiny under *Reed v. Town of Gilbert*. 135 S. Ct. 2218 (2015). Because the City had not demonstrated the Sign Code's content-based regulation of off-premises signs containing noncommercial speech survived strict scrutiny, the Court denied summary judgment on Reagan's claim that denial of the Digital Conversion Applications violated the First Amendment. Order of May 23, 2019 [#49] at 16–17. That claim is currently set for trial in November 2019. Order of Sept. 22, 2017 [#11] at 3.

The City now moves to dismiss Reagan's claims for lack of jurisdiction. Mot. Dismiss [#50] at 1. In the alternative, the City moves for reconsideration of the Court's prior summary judgment order. *Id.* This pending motion is ripe for review.

3

## Analysis

### I. Motion to Dismiss for Lack of Jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). In order to meet this case-or-controversy requirement, plaintiffs must establish they have standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Plaintiffs have standing to sue if they have suffered an injury in fact fairly traceable to the challenged action of the defendant and "likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 750–52 (1984); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 561 (1992).

The City argues Reagan lacks standing to bring its remaining First Amendment claims—which challenge the denial of Reagan's Digital Conversion Applications—because (1) Reagan has not suffered any injury; (2) any injury suffered by Reagan is not traceable to the City's denial of the Digital Conversion Applications; and (3) the denial of the Digital Conversion Applications is not redressable because those applications will be denied on content-neutral grounds even if Reagan obtains all available relief in this lawsuit. Mot. Dismiss [#50] at 3. The Court assesses each of these arguments in turn.

#### A. Injury in Fact

The City argues Reagan has not been injured by the application of the Sign Code because "the City has only denied Reagan's request to convert the billboards to digital LED displays." Mot. Dismiss [#50] at 5. But that denial *is* a cognizable injury, so the Court rejects this argument.

4

B.  **Causation**

The City argues Reagan's injury was not caused by the Sign Code because the denial of the Digital Conversion Applications does not constitute an injury and Reagan has not suffered any other injury traceable to the Sign Code. Mot. Dismiss [#50] at 5–6. But as the Court just observed above, the denial of the Digital Conversion Applications is a cognizable injury. Further, that denial is traceable to the City's application of its Sign Code. Therefore, the Court rejects this argument, too.

C.  **Redressability**

The City initially argues that "any relief that could be granted under the claims left remaining after the Court's ruling" would have "no basis in the pleadings" and "would not provide Reagan with the commercial billboard permit it seeks." Mot. Dismiss [#50] at 4, 6–7. To the contrary, however, Reagan's pleadings request the Court declare invalid any relevant part of the Sign Code "as applied to Reagan" and dispense any "other relief to which Reagan is entitled." Am. Compl. [#18] at 8. And if the Court declares the Sign Code's content-based regulation of on- and off-premises signage is unconstitutional as applied to Reagan's noncommercial speech and enjoins those provisions' application here, then Reagan's injury will be redressed.

The City next argues that Reagan's claims are not redressable because Reagan is complaining of the Sign Code's application to noncommercial speech but only seeks permits related to commercial billboards. *Id.* at 7. But Reagan's permits did not specify that they sought to erect a billboard for only commercial speech. Thus, this argument is inapposite.

The City further argues Reagan's claims are not redressable because the Digital Conversion Applications are subject to denial under several content-neutral provisions of the

5

Sign Code. *Id.* at 7–8. First, the City contends Reagan's Digital Conversion Applications could be denied under § 13.01.016(a) or § 13.03.007 because they sought to use LED lights in violation of another provision, § 13.01.006(g). *Id.* at 7–8. But § 13.01.006(g) is not content neutral because it relies on a content-based distinction between on- and off-premises speech, *see* Sign Code §13.01.006(g) (relying on § 13.01.007),[3] and thus, insofar as the application of § 13.01.016(a) and § 13.03.007 depended on § 13.01.006(g), their application was not content neutral. Because application of the provisions apparently *did* depend on § 13.01.006(g), *see* Mot. Dismiss [#50] at 8, the City's argument fails on its own terms. Second, the City contends Reagan's Digital Conversion Applications could have been denied under § 13.01.016(a). Mot. Dismiss [#50] at 10–11. That provision imposes various requirements on "replacement sign[s]." *See* Sign Code § 13.01.016(a). But it is not clear that modifications to install an LED face would qualify as a "replacement" under the provision as opposed to a "change or alteration." *See id.* Thus, the City has failed to carry its burden of persuasion on this argument. Third, the City argues the Digital Conversion Applications could have been denied under § 13.01.016(a)(3), which requires nonconforming signs to abide by size limitations set by § 13.01.018. Mot. Dismiss [#50] at 11. The City argues Reagan's applications violated this provision not by violating § 13.01.018 but by violating a separate size limitation imposed on LED signs by § 13.01.011. *Id.* Yet § 13.01.016(a)(3) does not require nonconforming signs to abide by the limitation imposed by § 13.01.011, nor did the City rely on § 13.01.011 when it denied the Digital Conversion Applications. *See* Denial Letters at 1–6. Therefore, the Court rejects this

---

[3] The City implies it does not matter whether § 13.01.007 is content neutral because that section "does not provide any exception[] to the LED Sign Prohibition." Mot. Dismiss [#50]. The Court rejects this hard-to-follow argument as unsupported by the text of § 13.01.007. *See* Sign Code § 13.01.007 ("Electronically controlled changeable copy signs shall be permitted as follows[] . . . .").

argument and concludes Reagan still has standing because its claims are still redressable following the Court's previous ruling on the City's summary judgment motion.

## II. Motion for Reconsideration

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017); *see also* FED. R. CIV. P. 54(b). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Kroger*, 864 F.3d at 336 (internal quotation marks and citation omitted).

The City argues the Court's prior order erred in using strict scrutiny to assess the constitutionality of the Sign Code as applied to regulate Reagan's noncommercial speech. Mot. Dismiss [#50] at 12–13. Specifically, the City argues that the Fifth Circuit's decision in *RTM Media, LLC v. City of Houston*, 578 F. Supp. 3d 220 (5th Cir. 2009), precludes application of strict scrutiny to billboards that exhibit both commercial and noncommercial speech. Mot. Dismiss [#50] at 12–13.

*RTM Media* is distinguishable. In that case, the Fifth Circuit considered the constitutionality of an ordinance that exempted from regulation all noncommercial signs, so long as those signs were used to display exclusively noncommercial speech. *RTM Media*, 578 F. Supp. 3d at 222. Here, by contrast, the Sign Code does not contain any exception for noncommercial signs, and the permitting process established by the Sign Code does not take into account, in any way, whether an applicant seeks to erect a sign displaying commercial or noncommercial speech.[4] *See* Sign Code § 13.01.005. What's more, the City's motion for

---

[4] Although the Sign Code does distribute some exemptions based on a distinction between on- and off-premises commercial speech, that content-based distinction does not directly track the distinction between commercial and noncommercial speech. The City attempts to argue off-premises speech is the same thing as

7

reconsideration does not point to any evidence that the City's rejection of the Digital Conversion Applications took into consideration whether Reagan's proposed signs would display commercial or noncommercial speech.[5] And even if the City *had* taken into consideration whether the proposed signs were to display commercial or noncommercial speech, it would not have made a difference because the Sign Code does not contain any mechanism or exemption through which the City can avoid applying the Sign Code's content-based restrictions to noncommercial speech.[6]

In sum, there is no plausible basis upon which the Court could conclude that the City did not apply content-based restrictions to noncommercial speech. Because the Sign Code fails to distinguish between commercial and noncommercial speech and instead indiscriminately applies content-based restrictions to both forms of speech, strict scrutiny applies. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1268 n.15 (11th Cir. 2005) ("Because the sign code does not regulate commercial speech as such, but rather applies without distinction to signs bearing commercial and noncommercial messages, the *Central Hudson* test has no application here [and strict scrutiny applies]."); *cf. Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) ("[A]lthough laws that restrict *only* commercial speech are content based, such restrictions need only withstand intermediate scrutiny." (emphasis added) (internal citation omitted)).

The City protests that applying strict scrutiny in this case would "eliminate [cities'] authority to regulate commercial billboards." Mot. Dismiss [#50] at 15. The Court disagrees. If a

---

commercial speech, but it cites no law in support of its position, and the Court concludes the City has failed to carry its burden of persuasion on this point.

[5] As a result, the Court has no way of knowing whether the content-based restrictions imposed by the Sign Code were imposed because the proposed signs were to display commercial speech; because they were to display noncommercial speech; or for some other reason entirely.

[6] Because the Sign Code lacks such a mechanism, the City would have had to deny Reagan's permits even if the proposed signs were to display *only* noncommercial speech.

municipality imposes content-based regulations on commercial speech but exempts noncommercial speech, then the application of those regulations to billboards containing both commercial and noncommercial speech would be subject to only intermediate scrutiny because in that instance, no content-based regulations are applied to noncommercial speech. That is the path many municipalities have chosen. *See, e.g.*, *Contest Promotions, LLC v. City of San Francisco*, 874 F.3d 597, 600 (9th Cir. 2017) (noting city's sign code "distinguishe[d] between commercial and noncommercial signs" by exempting the latter from the challenged regulation). The problem here, however, is that the Sign Code does not contain any exemption for noncommercial speech and instead imposes content-based regulations on both commercial and noncommercial speech. This imposition of content-based restrictions on noncommercial speech requires the application of strict scrutiny.

Finally, the City argues its regulations are content neutral even if they draw a distinction between on- and off-premises signage. Mot. Dismiss [#50] at 16–17. Because the City already urged these same arguments in its motion for summary judgment and because the Court is satisfied that its previous order rejecting those arguments was correct, the Court rejects them once again. *See* Order of May 23, 2019 [#50] at 13–14.

## Conclusion

The Court concludes it retains jurisdiction over Reagan's remaining claims because Reagan possesses standing to bring those claims. The Court therefore denies the City's motion to dismiss for lack of jurisdiction. Further, the Court again concludes that the Sign Code applies content-based restrictions to noncommercial speech and that the constitutionality of the application of these restrictions to noncommercial speech must be evaluated under strict scrutiny. Because the City has still not carried its burden of demonstrating the Sign Code's content-based

regulations of noncommercial speech satisfy strict scrutiny, the Court again concludes the City is not entitled to summary judgment on Reagan's claims. Correspondingly, the Court denies the City's motion for reconsideration.

Accordingly,

The City's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Reconsideration [#50] is DENIED.

SIGNED this the 15th day of August 2019.

*Sam Sparks*
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE